UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CARLOS ANUNCIACAO, et al.,       ) | |
| ) | |
| Plaintiffs,       ) | |
| v.                                              ) | CIVIL ACTION |
| ) | NO. 07-10904-JGD |
| CATERPILLAR JAPAN, LTD.,       ) | |
| ) | |
| Defendant.       ) | |

**MEMORANDUM OF DECISION AND ORDER ON
PLAINTIFFS' MOTION FOR A NEW TRIAL**

March 14, 2012

DEIN, U.S.M.J.

## I. INTRODUCTION

On December 12, 2011, after 11 days of trial, the jury returned a verdict in favor of the defendant Caterpillar Japan, Ltd. in this products liability case. In response to Special Questions, the jury found that the defendant was "negligent in designing and manufacturing the Caterpillar 320CU excavator that was involved in Mr. Anunciacao's accident on December 5, 2005" and that it breached the implied warranty of merchantibility at the time of its sale of the excavator in 2001. (Jury Verdict Form (Docket No. 281) at Question Nos. 1, 7). In connection with both claims, however, the jury also found that Caterpillar's conduct was not "a proximate cause of the accident that occurred on December 5, 2005[.]" (Jury Verdict Form at Question Nos. 2, 8). This matter is presently before the court on the plaintiffs' Motion for a New Trial. (Docket

No. 283). Therein, the plaintiffs do not claim that there was an error in the trial. Nor do they take exception to the jury charge as given. Rather, their contention is that "the jury plainly misunderstood the concept of proximate cause" and that a new trial is needed "in order to prevent an injustice." (Mot. at 3).

This was a very difficult case, and a well-tried case. While I have discretion in connection with a motion for a new trial, a "judge cannot displace a jury's verdict merely because [s]he disagrees with it or because a contrary verdict may have been equally supportable[,]" and "trial judges do not sit as thirteenth jurors, empowered to reject any verdict with which they disagree." Jennings v. Jones, 587 F.3d 430, 436 (1st Cir. 2009) (internal punctuation and citations omitted). Because the jury's finding that the design defect was not the proximate cause of the accident is amply supported by the evidence, the motion for a new trial is DENIED.

## II. DISCUSSION

The plaintiffs' theory of the case was that the machine "had an unremedied blind area, which prevented the operator from being able to see objects and persons immediately behind the machine." (Mot. at 1). I agree with the plaintiffs' assertion that "[t]he jury's verdict on design defect plainly signals that it found the blind area to be unreasonably dangerous and that it rejected the defense position that the machine's ability to rotate made it sufficiently safe." (Id.). While the plaintiffs introduced evidence of several possible alternative designs, they focused primarily on the absence of a counterweight mounted convex mirror. There was also significant testimony about the absence of a

travel alarm.  Under either scenario, the jury could reasonably have found that the design defect was not the proximate cause of the accident.  Unfortunately, there were many people involved whose conduct could have been deemed to have caused the accident.  I cannot find that the jury clearly did not understand the meaning of proximate cause.

### The Jury Charge

The jury was charged regarding proximate cause, without objection, as follows:

> If you determine that Caterpillar Japan breached its duty to design the excavator with reasonable care, so if you find to Question No. 1 yes, then you must consider whether its conduct, the design, was a proximate cause of Mr. Anunciacao's accident.  Even if you find that Caterpillar Japan breached its duty of care, the defendant cannot be held liable unless its negligence proximately caused the accident.  Caterpillar Japan denies that it was negligent and also denies that its conduct was the proximate cause of Mr. Anunciacao's accident.  Caterpillar Japan contends that the accident was caused solely by others.
>
> The defendant's conduct was the legal or proximate cause of Mr. Anunciacao's accident if it was a substantial factor in bringing it about.  By substantial, I mean that the defendant's contribution to the harm, in other words, its negligence, was not an insignificant factor.  The defendant's negligence must contribute significantly to the result; it must be a material and an important ingredient in causing the harm, not just slight, insignificant, or tangential to causing the harm.
>
> The plaintiffs have the burden of proving by a preponderance of the evidence that Caterpillar Japan's negligence substantially contributed to causing Mr. Anunciacao's accident.  The plaintiffs do not have to prove that Caterpillar Japan's negligence was the only or predominant cause of the accident; it is enough for the plaintiffs to prove that Caterpillar Japan's negligence was a substantial contributing factor in causing the accident.

> If you find that someone, other than Caterpillar Japan, was the sole proximate cause of the accident, then you must return a verdict for the defendant on the plaintiffs' negligence claim.  However, if you find that the negligence of Caterpillar Japan was a substantial contributing factor in causing the accident, even if it was not the sole cause, then your consideration of the plaintiffs' claim continues.
>
> The plaintiffs must establish that the general type of harm suffered by Mr. Anunciacao was reasonably foreseeable to a manufacturer in the defendant's position at the time of its negligence.  The plaintiffs do not have to establish that Caterpillar Japan foresaw, or should have foreseen, the exact manner in which Mr. Anunciacao's accident occurred; but the plaintiffs must establish that Mr. Anunciacao's harm was a natural and probable consequence of the defendant's negligence.  Thus, if Caterpillar Japan should have foreseen that its conduct might cause harm to a person in Mr. Anunciacao's position in substantially the manner in which it was brought about, the injury is regarded as the legal consequence of the defendant's negligence.
>
> Even if you find that Caterpillar Japan was negligent, and its negligence was a proximate cause of the accident, you must then determine if the chain of causation between its negligence and Mr. Anunciacao's accident was broken by the intervention of a superseding cause.  A superseding cause is defined as an act of a third person or other force which by its intervention prevents the defendant from being liable for harm that its earlier negligence has been a substantial factor in bringing about.
>
> The intervening negligence of a third party will only be sufficient to break the chain of causation if the third party's conduct was not reasonably foreseeable by the defendant at the time of its own negligence.  A defendant may not be relieved from liability as a result of the actions of another person if such actions were reasonably foreseeable.  Only unusual, extraordinary negligence of a third party will excuse the liability of a negligent defendant.

These concepts were described to the jury again (in a similar charge) in connection with the plaintiffs' breach of implied warranty claim.

Applying these legal principles to the evidence at trial, the jury could have determined either that Caterpillar's design defect was not the proximate cause of the accident or there was a superseding cause of the accident. I will describe a few, reasonable, scenarios below, recognizing that the jury could have reached its verdict for a number of other reasons as well.

## The Absence of a Counterweight Mirror

This court will assume, arguendo, that the design defect found by the jury was the absence of a counterweight mirror. Recognizing that it is disputed, this court also will assume that if the cab of the excavator was either facing straight ahead up June Street or at a "10 o'clock" angle to the curb, the mirror, if positioned correctly, would have revealed the blind spot behind the excavator in which Mr. Anunciacao and Captain Desrosiers were standing. Nevertheless, based on the evidence, the jury could have found that the plaintiffs failed to prove by a preponderance of the evidence that the accident would have been avoided if the counterweight mirror had been installed.

Given the testimony of Mr. Santos and all of the events happening at the time of the accident, the jury could reasonably have found that even if the mirror had been there, the plaintiffs failed to prove by a preponderance of the evidence that Mr. Santos would have looked at the mirror at the precise moment before moving the excavator so as to avoid the accident. There was evidence from which the jury could find that if he had looked in the mirror even a few minutes before moving the machine, Mr. Anunciacao may not have been visible as he had not yet walked into the blind spot. Given all the

5

directions in which Mr. Santos needed to look in order to move the equipment safely, the jury could have concluded that even if Mr. Santos had checked in a counterweight mirror, it was more likely than not that the accident would have happened anyway.

Moreover, there was evidence from which the jury could have concluded that it was more likely than not that given everything that was going on, either the machine was not positioned in such a way that Mr. Santos could have seen Mr. Anunciacao in a counterweight mirror before he moved the machine, or that Mr. Santos was not likely to have looked.

Specifically, but without limitation, Mr. Santos' testimony was that he was very aware of the blind spot behind the machine, and that the blind spot moved as the cab of the machine moved.  His testimony was also that he advised Mr. Anunciacao that he was going to be backing up shortly.  Under such circumstances, the jury could have found that Mr. Santos was not focused on what was directly behind the machine, since, in effect, he had already advised Mr. Anunciacao not to be behind him, and thus, was not likely to have used a counterweight mirror.[1]

The jury could also have found that Mr. Santos did not take steps to determine where Mr. Anunciacao was before moving the excavator, even though he knew that there was a blind spot behind the machine.  Based on this and other testimony, the jury could

---

[1] There was also evidence that if Mr. Santos had in fact done all the checking he testified to doing, he should have, in fact, seen the two men behind the machine.

6

have concluded that Mr. Santos' conduct was either the sole proximate cause of the accident or a superceding proximate cause of the accident.

In addition, according to Mr. Santos, Mr. Anunciacao had advised him that the police officer was allowing cars to come down Pearce Street. Consequently, the jury could have believed that Mr. Santos turned the cab to a true 90 degree angle so that he had a clear view up Pearce Street. This would also be consistent with Mr. Santos' testimony that he saw a car coming down Pearce Street. The jury did not have to accept Mr. Santos' testimony that he moved to a 10 o'clock position. If he had moved the excavator 90 degrees, not only would he have not needed a mirror to see Mr. Anunciacao, but the counterweight mirror would not have given Mr. Santos a view of Mr. Anunciacao or Captain Desrosiers. Therefore, its absence would not have been a proximate cause of the accident.

Finally, but again without limitation, there was additional evidence from which the jury could have found that Mr. Santos was not likely to have used a counterweight mirror. He testified that it was easier to move the machine than to turn around and look behind him. The jury could have concluded that since Mr. Santos turned the excavator at least some amount before backing up, he was unlikely to have also turned his body around to look at a counterweight mirror. Under any of these scenarios, the absence of a counter-weight mirror would not have been the proximate cause of the accident.

In addition to Mr. Santos' conduct, the jury could have found that there were other causes of the accident which had nothing to do with the absence of a counterweight

mirror. For example, there was evidence that L.A.L. failed to use a spotter even though the excavator did not have a travel alarm. A spotter was required by OSHA regulations. The jury could have found that it was more likely than not that the absence of a spotter, whose primary responsibility would have been to make sure that the area was clear before the excavator moved, was either the direct proximate cause of the accident or a superceding proximate cause. With a spotter, it would not have made a difference if or when Mr. Santos looked into a counterweight mirror. Without belaboring the point, while the jury could have concluded that it was more likely than not that Mr. Santos would have looked in the mirror and would have avoided the accident, it was well within the province of the jury to find otherwise. Under such circumstances, I do not feel it appropriate to disturb the jury's verdict.

## The Travel Alarm

Recognizing that this was not the plaintiffs primary theory, nevertheless, the jury may also have found that the design defect was the absence of a travel alarm. It was mentioned by plaintiffs' counsel in his opening, and was a theme throughout the trial. There was undisputed testimony that Mr. Santos and Mr. Anunciacao complained to their employer about the absence of a travel alarm, and that its absence made for a dangerous situation.

The jury could have found that a travel alarm had been installed in the excavator at some point, and had subsequently been removed. The jury could have found it more likely than not that if an alarm had been installed by Caterpillar, it would have been

removed prior to the time of the accident by whomever removed the one that had been added. Under such circumstances, Caterpillar's failure to install a travel alarm at the time the machine was manufactured would not have been the proximate cause of the accident.

### III. CONCLUSION

It is the trial court's duty to overturn a jury verdict only if "the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a clear miscarriage of justice." Mayo v. Schooner Capital Corp., 825 F.2d 566, 570 (1st Cir. 1987) (internal quotation and citation omitted). In the instant case, in the absence of any error, I feel constrained to uphold the jury verdict. It can be supported by substantial evidence and is dependent upon the assessment of credibility of witnesses — a task firmly in the jury's province. It is the jury, not the court, who are the fact-finders in a jury trial. Consequently, the motion for a new trial is DENIED.

    /s/Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge